## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **WORLD WIDE MEDICAL TECHNOLOGIES, LLC, ADVANCED CARE PHARMACY, INC. GARY A. LAMOUREAUX and RICHARD A. TERWILLIGER,**<br><br>      **Plaintiffs,**<br>**v.**<br><br>**ANTHONY D. BISCOTTI and NUCLEAR CONSULTANTS GROUP, INC.,**<br><br>      **Defendants.** | **Docket No. 04-11619-NG** |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF THE DEFENDANTS ANTHONY D. BISCOTTI AND NUCLEAR CONSULTANTS GROUP, INC.

The defendants in the above-captioned matter, Anthony D. Biscotti and Nuclear Consultants Group, Inc. ("NCG") (collectively the "Defendants"), hereby respond to the allegations of the numbered paragraphs of the Complaint filed by the plaintiffs World Wide Medical Technologies, LLC ("WW"), Advanced Care Pharmacy, Inc. ("ACP"), Gary A. Lamoureux and Richard A. Terwilliger (collectively the "Plaintiffs") as follows:

## ANSWER

### Nature of the Case

1.      Paragraph 1 of the Complaint does not allege facts but merely sets forth the Plaintiffs' description of the nature of the case. Therefore, no response is required or necessary. To the extent that this paragraph contains factual aversions, the Defendants deny such factual aversions.

**Jurisdiction**

2.     Paragraph 2 of the Complaint contains conclusions of law to which no response is required or necessary.  To the extent that this paragraph contains factual aversions, the Defendants deny such factual aversions.

**Venue**

3.     NCG admits that it resides in this judicial district.  Mr. Biscotti also admits that he resides in this judicial district.  The remainder of paragraph 3 of the Complaint contains conclusions of law to which no response is required or necessary.  To the extent that the remainder of this paragraph contains factual aversions, the Defendants deny such factual aversions.

**Parties**

4.     Defendants are without information sufficient to form a belief as to the allegations contained in paragraph 4 of the Complaint.

5.     Defendants admit the allegations contained in paragraph 5 of the Complaint.

6.     Defendants are without information sufficient to form a belief as to the allegations contained in paragraph 6 of the Complaint.

7.     Defendants are without information sufficient to form a belief as to the allegations contained in paragraph 7 of the Complaint.

8.     Defendants admit the allegations contained in paragraph 8 of the Complaint.

9.     Defendants admit the allegations contained in paragraph 9 of the Complaint.

**Factual Background**

10.     Defendants admit that, very broadly speaking, brachytherapy is the field of the implantation of radioactive elements ("seeds") into the body for treating cancer and that a typical

application of brachytherapy is the treatment of prostate cancer. The Defendants are without information sufficient to form a belief as to the allegations contained in paragraph 10 of the Complaint relating to WW's founding, patents and any "painstaking research and effort." Defendants deny that any of the Plaintiffs have developed products that have "revolutionized" the brachytherapy market.

11.    The Defendants admit that the "760 Patent" names the plaintiffs Gary Lamoureux and Richard Terwilliger as inventors and that a certificate of correction to the 760 Patent appears to have been issued on November 25, 2003. Defendants are without information sufficient to form a belief as to the authenticity of Exhibit A and whether the 760 Patent "is, and at all relevant times in the past has been, in full force and effect." Defendants are also without information sufficient to form a belief as to the ownership or licensing of the 760 Patent.

12.    The Defendants admit that the 760 Patent describes a needle for use in implanting brachytherapy seeds and more particularly a needle with a cannula having a wall and a sharpened distal end, a line of elements in the cannula extending rearward from the distal end, yieldable means, including a frictionally held plug, for positioning an element more proximate the distal end of predetermined distance from the distal end, and a stylet reciprocable in the cannula and having a distal end engaging an end of the line of elements more remote from the distal end of the cannula. The Defendants deny any allegations inconsistent with this admission.

13.    The Defendants admit that there existed and exists a great deal of prior art relating to brachytherapy. Defendants deny that the 760 Patent relates in any way to the "loading" of brachytherapy seeds. Defendants admit that pre-loading of brachytherapy needles may be advantageous to hospitals and medical professionals. Defendants admit that pre-plugging of brachytherapy needles – to which the 760 Patent, in one specific manner, does relate – may be

advantageous to hospitals and medical professionals. Defendants admit that pre-loaded, pre-plugged and sterile brachytherapy needles may be advantageous to hospitals and medical professionals. The Defendants deny the remaining allegations contained in paragraph 13 of the Complaint.

14.    Defendants are without information sufficient to form a belief as to the allegations contained in Paragraph 14 of the Complaint.

15.    Defendants admit that WW did not disseminate any confidential, proprietary information to Mr. Biscotti regarding, among other things, the stranding of brachytherapy seeds and plugging of brachytherapy needles. Defendants are without information sufficient to form a belief as to the remaining allegations contained in Paragraph 15 of the Complaint.

16.    Defendants admit that WW allowed Mr. Biscotti only limited access to its Connecticut facility, despite the fact that he served as WW's Radiation Safety Officer. Defendants are without information sufficient to form a belief as to the remaining allegations contained in Paragraph 16 of the Complaint.

17.    Defendants are without information sufficient to form a belief as to the allegations contained in Paragraph 17 of the Complaint.

**Worldwide Begins Negotiations with Biscotti**

18.    Defendants admit that Mr. Biscotti and WW, in early 2002, discussed entering into an employment, consulting or joint venture arrangement whereby Mr. Biscotti, who was a licensed nuclear pharmacist at the time, would assist WW in establishing a nuclear pharmacy. Defendants deny the remaining allegations contained in paragraph 18 of the Complaint.

19.    Defendants admit the allegations contained in paragraph 19 of the Complaint.

20. Defendants admit that, at the time Mr. Biscotti first met with WW representatives, he informed them that he had knowledge regarding brachytherapy, including the pre-loading and pre-plugging of brachytherapy needles, having received training at Syncor on the use of brachytherapy to fight prostate cancer. Mr. Lamoureux, during their initial meetings, indicated that Mr. Biscotti's knowledge and experience in the field made him particularly well-suited to lead WW's effort to create a Massachusetts nuclear pharmacy. The Defendants deny the remaining allegations contained in paragraph 20 of the Complaint.

21. Defendants admit that Mr. Lamoureux, during their initial meetings, indicated that Mr. Biscotti's knowledge and experience in the field made him particularly well-suited to lead WW's effort to create a Massachusetts nuclear pharmacy. The Defendants deny the remaining allegations contained in paragraph 21 of the Complaint.

22. The Defendants deny the allegations contained in paragraph 22 of the Complaint.

**Biscotti Agreed to Be Bound by His Non-Disclosure Agreement**

23. The Defendants admit that, prior to commencing consulting duties with WW, Mr. Biscotti executed the confidentiality agreement attached to the Defendants' Complaint as Exhibit B (the "NDA"). The NDA speaks for itself. To the extent that this paragraph contains additional factual aversions requiring a response, the Defendants deny such factual aversions.

24. The Defendants deny the allegations contained in Paragraph 24 of the Complaint. Answering further, the Defendants state that the parties did not negotiate the NDA. Rather, WW presented Mr. Biscotti with the NDA and told him to immediately sign the agreement. He was given very little time to review the agreement and never consulted with an attorney regarding the same.

25.     Paragraph 25 of the Complaint contains purported recitations to the NDA to which no response is required or necessary as that document speaks for itself.  To the extent that this paragraph contains factual aversions requiring a response, the Defendants deny such factual aversions.

26.     Paragraph 26 of the Complaint contains purported recitations to the NDA to which no response is required or necessary as that document speaks for itself.  To the extent that this paragraph contains factual aversions requiring a response, the Defendants deny such factual aversions.

27.     Paragraph 27 of the Complaint contains purported recitations to the NDA to which no response is required or necessary as that document speaks for itself.  To the extent that this paragraph contains factual aversions requiring a response, the Defendants deny such factual aversions.

28.     Paragraph 28 of the Complaint contains purported recitations to the NDA to which no response is required or necessary as that document speaks for itself.  To the extent that this paragraph contains factual aversions requiring a response, the Defendants deny such factual aversions.

**World Wide Disclosed Confidential Information to Biscotti under the NDA**

29.     Defendants deny the allegations contained in Paragraph 29 of the Complaint.  In further answering, the Defendants state that Mr. Biscotti was never exposed to any confidential or proprietary needle loading or plugging methods while at WW.  At the outset of Mr. Biscotti's WW engagement, Mr. Lamoureux, shared with Mr. Biscotti a videotape he "acquired" from Custom Care Pharmacy, Inc., located in Florida ("Custom Care"), a WW competitor.  The videotape was essentially a "step-by-step" instructional guide on how to load, perform quality

control, sterilize and ship brachytherapy seeds.  The videotape also showed the interior of Custom Care's nuclear pharmacy and its working personnel.  Mr. Lamoureux indicated to Mr. Biscotti that he wanted Mr. Biscotti to utilize the tape in constructing a nuclear pharmacy for WW.  During Mr. Biscotti's eight-month WW engagement, he primarily worked out of his Acton home.  He visited WW's Connecticut headquarters on only rare occasions.  He did not have keys to any WW facilities or access to its computer systems.  Mr. Biscotti's duties and responsibilities centered on the establishment of the nuclear pharmacy, including, but not limited to site selection, lease negotiation, obtaining permits and licenses from regulatory bodies, purchasing office furnishings and equipment, hiring staff and, once the Maynard site was selected, training Maynard Fire Department personnel in radiation safety and emergency response.  All information he received from WW was familiar both to Mr. Biscotti and/or known in the industry.  Defendants deny all allegations contained in paragraph 29 inconsistent with the foregoing.

30.    Defendants admit that, during 2002, Mr. Biscotti provided Mr. Lamoureux with $20,000 in consideration for his agreement to provide Mr. Biscotti with 5% of the ownership of the company to be established in Massachusetts.  Mr. Lamoureux and Mr. Biscotti also agreed that he would receive an additional 5% ownership stake in the company for each year of Mr. Biscotti's employment (not to exceed 30%) as "sweat equity" and that the new company would be called Advanced Care Pharmacy, Massachusetts ("ACP").  Defendants deny the remaining allegations contained in paragraph 30 of the Complaint.

31.    Defendants admit the allegations contained in paragraph 31 of the Complaint.

32.    Defendants admit the allegations contained in paragraph 32 of the Complaint.

33.     Defendants admit the allegations contained in the first two sentences of paragraph 33 of the Complaint.  Defendants deny the remaining allegations contained in paragraph 33 of the Complaint.

**Biscotti Oversees the Set-up of the Maynard Facility**

34.     Defendants admit that Mr. Biscotti oversaw the set-up of the Maynard facility. Defendants deny the remaining allegations contained in paragraph 34 of the Complaint.

35.     Defendants admit that Mr. Lamoureux shared with Mr. Biscotti a videotape he "acquired" from his former partner, Custom Care Pharmacy, Inc., located in Florida ("Custom Care").  The videotape was essentially a "step-by-step" instructional guide on how to load, perform quality control, sterilize and ship brachytherapy seeds.  The videotape also showed the interior of Custom Care's nuclear pharmacy and its working personnel.   Defendants deny the remaining allegations contained in paragraph 35 of the Complaint.

36.     Defendants admit that Mr. Biscotti developed and used particular shipping and tracking procedures for brachytherapy products, primarily dictated by the laws governing the transport of radioactive materials.  Defendants deny that any such shipping and tracking procedures were unique or confidential.  Defendants deny the remaining allegations contained in paragraph 36 of the Complaint.

37.     Defendants are without information sufficient to form a belief as to the allegations contained in paragraph 37 of the Complaint relating to what WW may have "determined" and whether any particular information was "closely guarded" by WW.  Defendants deny the remaining allegations contained in paragraph 37 of the Complaint.

38.     Defendants admit that in October 2002 the Maynard facility became operational. Defendants deny that Mr. Biscotti "manufactured" any product at the facility; rather, Mr. Biscotti

and his staff tested stranded and non-stranded brachytherapy seeds, loaded the seeds into ACP's needles and sterilized the seeds using common methods known throughout the industry. They conducted quality control and ensured that the end-user specifications were met, and then packaged, sterilized and shipped the seeds to the end user. Defendants deny the remaining allegations contained in paragraph 38 of the Complaint.

39. Defendants admit that Mr. Biscotti had contact with vendors and customers. Defendants deny the remaining allegations contained in paragraph 39 of the Complaint.

40. Defendants are without information sufficient to form a belief as to the allegations contained in Paragraph 40 of the Complaint.

41. Defendants deny the allegations contained in paragraph 41 of the Complaint. Further answering, the Defendants state that WW, ACP and Mr. Lamoureux breached their agreement with Mr. Biscotti and refused to issue to Mr. Biscotti stock certificates documenting Mr. Biscotti's 5% ownership interest in ACP. Thereafter, the parties engaged in settlement communications.

42. Defendants deny the allegations contained in paragraph 42 of the Complaint.

43. Defendants admit the allegations contained in paragraph 43 of the Complaint.

44. Defendants admit the allegations contained in paragraph 44 of the Complaint.

45. Defendants deny the allegations contained in paragraph 45 of the Complaint.

46. Defendants admit that WW abruptly shuttered the Maynard facility on February 10, 2004 without notice to ACP's employees or to the Massachusetts Board of Pharmacy, as is required by law. Defendants are without information sufficient to form a belief as to the remaining allegations contained in Paragraph 46 of the Complaint.

47.     Defendants are without information sufficient to form a belief as to the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants admit that Mr. Biscotti engaged in several conversations with Mr. Terwilliger and Mr. Strawinski on February 10, 2004 relating to the shut down of the facility. Defendants deny the remaining allegations contained in paragraph 48 of the Complaint.

49.     Defendants admit that ACP attempted to brow beat employees into executing confidentiality agreements on their way out the door, threatening to withhold paychecks unless they agreed to do so.  Defendants are without information sufficient to form a belief as to the remaining allegations contained in Paragraph 49 of the Complaint.

50.     Defendants admit that equipment was packed on February 10 and that Mr. Biscotti was asked for, and turned over, a set of keys to the facility.  Defendants deny the remaining allegations contained in paragraph 50 of the Complaint.

51.     Defendants are without information sufficient to form a belief as to the allegations contained in Paragraph 51 of the Complaint regarding what Mr. Strawinski did or observed. Defendants deny the remaining allegations contained in paragraph 51 of the Complaint.

52.     Defendants are without information sufficient to form a belief as to the allegations contained in Paragraph 52 of the Complaint regarding what Mr. Strawinski did or observed. Defendants admit that Mr. Biscotti informed Mr. Starwinski that he was removing personal belongings he had not had the opportunity to pack earlier in the day.  Mr. Biscotti took no property belonging to ACP when he left and currently possess no ACP property.  Defendants deny the remaining allegations contained in paragraph 52 of the Complaint.

**Biscotti And NCG Are Competing With World Wide And ACP**

53.    Defendants are without information sufficient to form a belief as to the allegations contained in Paragraph 53 of the Complaint regarding what the Plaintiffs' believe they discovered.

54.    Defendants admit that NCG was incorporated on March 5, 2004.  Defendants deny the remaining allegations contained in paragraph 54 of the Complaint.

55.    Defendants admit that Mr. Biscotti has solicited potential customers who are or were customers or potential customers of WW or ACP.  Defendants deny the remaining allegations contained in paragraph 55 of the Complaint.

56.    Defendants are without information sufficient to form a belief as to the hearsay allegations contained in Paragraph 56 of the Complaint regarding what the Plaintiffs believe they have been told by their customers.

57.    Defendants are without information sufficient to form a belief as to the hearsay allegations contained in Paragraph 57 of the Complaint regarding what the Plaintiffs believe they have been told by their customers.  Defendants admit to providing marketing material to potential customers.  Defendants deny the remaining allegations contained in paragraph 57 of the Complaint.

58.    Defendants admit that Mr. Biscotti received commendation letters from WW and provided the same to some customers or potential customers.  Defendants deny the remaining allegations contained in paragraph 58 of the Complaint.

59.    Defendants admit that WW and ACP filed a lawsuit against them in Middlesex Superior Court, including a motion for preliminary injunctive relief.  Defendants state that WW and ACP, faced with overwhelming evidence of the baseless nature of their complaint and

motion, and after being castigated by the Court for wasting the Court's time at the hearing on

their motion, dismissed their complaint without prejudice and decided to try their luck in federal

court. Defendants deny the remaining allegations contained in paragraph 59 of the Complaint.

60.    Defendants deny the allegations contained in paragraph 60 of the Complaint.

61.    Defendants deny the allegations contained in paragraph 61 of the Complaint.

<u>**Count I**</u>
**(Patent Infringement)**

62.    Defendants reallege and incorporate by reference paragraphs 1 through 61 of their

Answer.

63.    The Defendants admit that the "760 Patent" names the plaintiffs Gary Lamoureux

and Richard Terwilliger as inventors and that a certificate of correction to the 760 Patent appears

to have been issued on November 25, 2003. Defendants are without information sufficient to

form a belief as to the authenticity of Exhibit A. Defendants deny the remaining allegations

contained in paragraph 63 of the Complaint.

64.    Defendants are without information sufficient to form a belief as to whether the

760 Patent "is, and at all relevant times in the past has been, in full force and effect."

65.    Defendants are without information sufficient to form a belief as to the ownership

or licensing of the 760 Patent.

66.    Defendants are without information sufficient to form a belief as to the placement

of required statutory notices relating to the 760 Patent.

67.    Defendants deny the allegations contained in paragraph 67 of the Complaint.

68.    Defendants deny the allegations contained in paragraph 68 of the Complaint.

69.    Defendants deny the allegations contained in paragraph 69 of the Complaint.

**Count II**
**(Breach of the Non-Disclosure Agreement)**

70.    Defendants reallege and incorporate by reference paragraphs 1 through 69 of their Answer.

71.    Defendants deny the allegations contained in paragraph 71 of the Complaint.

72.    Defendants deny the allegations contained in paragraph 72 of the Complaint.

73.    Defendants deny the allegations contained in paragraph 73 of the Complaint.

74.    Defendants deny the allegations contained in paragraph 74 of the Complaint.

75.    Defendants deny the allegations contained in paragraph 75 of the Complaint.

**Count III**
**(Breach of the Covenant of Good Faith and Fair Dealing)**

76.    Defendants reallege and incorporate by reference paragraphs 1 through 75 of their Answer.

77.    Defendants deny the allegations contained in paragraph 77 of the Complaint.

78.    Defendants deny the allegations contained in paragraph 78 of the Complaint.

**Count IV**
**(Fraud)**

79.    Defendants reallege and incorporate by reference paragraphs 1 through 78 of their Answer.

80.    Defendants deny the allegations contained in paragraph 80 of the Complaint.

81.    Defendants deny the allegations contained in paragraph 81 of the Complaint.

**Count V**
**(Improper Use of Trade Secrets and Confidential Business Information)**

82.    Defendants reallege and incorporate by reference paragraphs 1 through 81 of their Answer.

83.    Defendants admit that Mr. Biscotti executed a NDA with WW.  Defendants deny the remaining allegations contained in paragraph 83 of the Complaint.

84.    Defendants deny the allegations contained in paragraph 84 of the Complaint.

85.    Defendants deny the allegations contained in paragraph 85 of the Complaint.

86.    Defendants deny the allegations contained in paragraph 86 of the Complaint.

87.    Defendants deny the allegations contained in paragraph 87 of the Complaint.

**Count VI**
**(Tortious Interference With Business Relations)**

88.    Defendants reallege and incorporate by reference paragraphs 1 through 87 of their Answer.

89.    Defendants deny the allegations contained in paragraph 89 of the Complaint.

90.    Defendants deny the allegations contained in paragraph 90 of the Complaint.

**Count VII**
**(Violations of Mass. Gen. L. ch. 93, § 42)**

91.    Defendants reallege and incorporate by reference paragraphs 1 through 90 of their Answer.

92.    Defendants deny the allegations contained in paragraph 92 of the Complaint.

93.    Defendants deny the allegations contained in paragraph 93 of the Complaint.

**Count VIII**
**(Conversion)**

94.    Defendants reallege and incorporate by reference paragraphs 1 through 93 of their Answer.

95.    Defendants are without information sufficient to form a belief as to the identity of "another employee" identified in this paragraph.  To the extent that this paragraph contains

14

averments relating to either of the Defendants, the Defendants deny the allegations contained in paragraph 95 of the Complaint.

96.    Defendants are without information sufficient to form a belief as to the identity of "another employee" identified in this paragraph.  To the extent that this paragraph contains averments relating to either of the Defendants, the Defendants deny the allegations contained in paragraph 96 of the Complaint.

## Count IX
### (Violations of Mass. Gen. L. ch. 93A)

97.    Defendants reallege and incorporate by reference paragraphs 1 through 97 of their Answer.

98.    Defendants deny the allegations contained in paragraph 98 of the Complaint.

99.    Defendants deny the allegations contained in paragraph 99 of the Complaint.

100.    Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.    Defendants deny the allegations contained in paragraph 101 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs are estopped by their own actions and omissions from obtaining any of the relief sought.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs are barred by their own illegal acts from obtaining any of the relief sought.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are barred by their own fraudulent acts from obtaining any of the relief sought.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs are completely barred from recovering any amount of alleged damages in this matter as it breached the contract and/or agreements upon which its claims are based.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs are barred by the doctrine of laches from obtaining any of the equitable relief sought.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are barred by the Statute of Frauds from obtaining any of the relief sought.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs have waived any right to obtain any of the relief sought from the Defendants.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs have released any right to obtain any of the relief sought from the Defendants.

## TENTH AFFIRMATIVE DEFENSE

Defendants have not and do not infringe any valid claim of the 760 patent either literally or under the Doctrine of Equivalents.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are precluded under the doctrine of prosecution history estoppel and/or prior art from asserting any claim construction of the 760 patent that would cover any activity by the Defendants.

## TWELTH AFFIRMATIVE DEFENSE

The 760 patent is invalid as it fails to comply with the requirements of the patent laws of the United States, 35 U.S.C. §§101 *et seq.*, including, without limitation, §§102, 103, and 112.

**DEFENDANTS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## COUNTERCLAIMS

### THE PARTIES

### The Nature of the Counterclaim Plaintiffs' Counterclaims

1.     Mr. Biscotti ("Mr. Biscotti") and Nuclear Consultants Group, Inc. ("NCG") (collectively the "Counterclaim Plaintiffs") bring these counterclaims against Gary A. Lamoureux, Richard A. Terwilliger, World Wide Medical Technologies, LLC ("WW") and Advanced Care Pharmacy, Inc. ("ACP") (collectively the "Counterclaim Defendants") for, among other things, their breach of an enforceable contract whereby the Counterclaim Defendants agreed to issue to Mr. Biscotti equity in ACP in consideration of his payment of $20,000 and his labor.  Mr. Biscotti seeks a judgment and order from this Court against Mr. Lamoureux, WW and ACP requiring those Counterclaim Defendants to issue to him equity in ACP, that they refrain from interfering with any and all stockholder rights he may have and/or that they pay to him monetary damages in an amount to be determined at trial.  Mr. Biscotti also seeks back wages wrongfully withheld by the Counterclaim Defendants.  The Counterclaim Plaintiffs also seek damages based upon the Counterclaim Defendants' tortious interference with the Counterclaim Plaintiffs' advantageous business relations and the Counterclaim Defendants' unfair and deceptive acts and practices.  Finally, the Counterclaim Plaintiffs' seek a declaration of non-infringement in their favor and against all of the Counterclaim Defendants as well as a declaration that the 760 Patent is invalid.

### Jurisdiction and Venue

2.     This Court has supplemental jurisdiction over the Counterclaim Plaintiffs' counterclaims pursuant to 28 U.S.C.A. §§ 1331, 1332, 1338(a), 1367(a), 2201(a) and 2202.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C.A. § 1391.

## The Parties

4.    Counterclaim Defendant World Wide is, upon information and belief, a limited liability company organized pursuant to the laws of the state of Connecticut with a principal place of business in Oxford, Connecticut.

5.    Counterclaim Defendant Advanced Care Pharmacy, Inc. is, upon information and belief, a corporation organized pursuant to the laws of the Commonwealth of Massachusetts, with a principal place of business in Maynard, Massachusetts.

6.    Counterclaim Defendant Gary Lamoureux is, upon information and belief, an individual residing at 373 Old Sherman Hill Road, Woodbury Connecticut, 06790.  Mr. Lamoureux is the President and Treasurer of ACP.  Upon information and belief, Mr. Lamoureux is a named inventor of the 760 Patent.

7.    Counterclaim Defendant Richard A. Terwilliger is an individual residing at 16 Three Mile Hill Road, Middlebury, Connecticut, 06762.  Upon information and belief, Mr. Terwilliger is a named inventor of the 760 Patent.

## Facts

8.    Mr. Biscotti has been a licensed nuclear pharmacist in Massachusetts since January 1994.

9.    Before he was engaged as an independent contractor by WW in 2002, he had substantial nuclear pharmacy experience, primarily with his employer, Syncor International Corporation located in Woburn, Massachusetts ("Syncor").

10.    Specifically, from 1993 through April 2002, Mr. Biscotti served as the Senior Staff Nuclear Pharmacist, Nuclear Pharmacy Manager and Radiation Safety Officer for Syncor.

11.     His duties and responsibilities at Syncor were quite extensive and the substantial knowledge and experience he gained at Syncor was put to use for the benefit of WW and ACP from 2002 until Mr. Biscotti's departure from ACP in February, 2004.

12.     In or about February 2002, Mr. Biscotti engaged in discussions with Gary Lamoureux, WW's President, about assisting WW in establishing a nuclear pharmacy in Massachusetts for the purpose of producing brachytherapy products.

13.     Brachytherapy is a form of prostate cancer radiation therapy whereby tiny radioactive "seeds" are stranded together and loaded into brachytherapy needles, or "loaded loose" into brachytherapy needles, sterilized and injected into the prostate gland.

14.     The number of seeds, type of radioactive isotope and loading form -- whether loose or stranded -- is dictated by the treating physician.

15.     Mr. Biscotti had significant knowledge regarding brachytherapy prior to his engagement with WW, having received training at Syncor on the use of brachytherapy to fight prostate cancer.

16.     Mr. Lamoureux indicated that Mr. Biscotti's knowledge and experience in the field made him particularly well-suited to lead WW's effort to create a Massachusetts nuclear pharmacy.

17.     Mr. Biscotti left Syncor for and began consulting with WW in or about April 2002.

18.     During Mr. Biscotti's eight-month WW engagement, he primarily worked out of his Acton home.

19.     He rarely visited WW's Connecticut headquarters.

20.     When visiting WW's headquarters Mr. Biscotti did pass through the building where seed stranding and needle loading was conducted, but was never instructed regarding anything relating to WW's seed stranding, sterilization, loading, packaging or shipping methodology.

21.     He did not have keys to any WW facilities nor access to its computer systems.

22.     He also was not provided with WW's "Good Manufacturing Practice" procedure, which is a detailed guide regarding how WW builds its strands and plugs its needles and would have been indispensable in the construction of the Massachusetts nuclear pharmacy if any manufacturing was to take place at the nuclear pharmacy, which it was not.

23.     Mr. Biscotti's WW duties and responsibilities centered on the establishment of the nuclear pharmacy, including, but not limited to site selection, lease negotiation, obtaining permits and licenses from regulatory bodies, purchasing office furnishings and equipment, hiring staff and, once the Maynard site was selected, training Maynard Fire Department personnel in radiation safety and emergency response.

24.     All information he received from WW was familiar to Mr. Biscotti prior to his WW engagement and/or well-known in the industry.

25.     During 2002, Mr. Biscotti provided Mr. Lamoureux with $20,000 in consideration for his agreement to provide Mr. Biscotti with 5% of the ownership of ACP, the company to be established in Massachusetts.

26.     Mr. Lamoureux and Mr. Biscotti also agreed that Mr. Biscotti would receive an additional 5% ownership stake in the company for each year of Mr. Biscotti's employment (not to exceed 30%) as "sweat equity".

27.    Mr. Lamoureux and Mr. Biscotti agreed that the new company would be called Advanced Care Pharmacy, Massachusetts.

28.    Mr. Biscotti understood that ACP was a separate and distinct corporate entity from WW.

29.    He had no knowledge of the legal corporate relationship between WW and ACP, if any, and had no knowledge of any licensing or other agreements between the entities.

30.    In late 2002 ACP commenced doing business.

31.    Mr. Biscotti commenced employment with ACP, as an employee rather than an independent contractor, on January 1, 2003.

32.    His title was Director of Pharmacy Operations.

33.    Mr. Biscotti never executed a confidentiality, non-disclosure, non-solicitation, non-competition or other restrictive agreement with ACP.

34.    At the outset of his ACP employment, Mr. Biscotti asked Mr. Lamoureux to issue to him, or cause ACP to issue to him, stock certificates evidencing his 5% ownership share of ACP.

35.    Mr. Lamoureux indicated that he would soon cause ACP's attorneys to issue the stock certificates.

36.    On several occasions prior to November 2003, Mr. Biscotti requested that Mr. Lamoureux issue to him, or cause ACP to issue to him, stock certificates evidencing his 5% ownership share of ACP.

37.    Mr. Lamoureux, on each such occasion, verbally confirmed that Mr. Biscotti was a 5% ACP shareholder but did not produce the requested stock certificates.

38.     During the course of 2003 Mr. Biscotti's relationship with Mr. Lamoureux became strained due, in large part, to Mr. Lamoureux's refusal to issue to Mr. Biscotti the stock certificates documenting Mr. Biscotti's 5% ownership interest in ACP, which interest would increase to 10% on January 1, 2004.

39.     By the fall of 2003 Mr. Lamoureux indicated an unwillingness to issue the stock certificates to Mr. Biscotti or even provide Mr. Biscotti with a reasonable stockholder agreement.

40.     Finally, by the end of 2003, the parties' relationship deteriorated to the breaking point.

41.     Mr. Lamoureux refused to provide Mr. Biscotti with a stock certificate, a reasonable stockholder agreement or even to return Mr. Biscotti $20,000 capital investment.

42.     Mr. Lamoureux's refusal to provide such evidence of Mr. Biscotti's ownership interest directly led to Mr. Biscotti's resignation in February 2004.

43.     Neither Mr. Lamoureux nor ACP paid to Mr. Biscotti several weeks of his accrued, unused vacation time at the time of his separation from ACP.

44.     Neither Mr. Lamoureux, WW nor ACP returned Mr. Biscotti's $20,000 investment upon his termination.

45.     Finally, under threat of legal action, Mr. Lamoureux returned Mr. Biscotti's $20,000 investment several months after Mr. Biscotti's separation from ACP.

46.     Mr. Biscotti established a corporation, the Counterclaim Plaintiff Nuclear Consultants Group, Inc., in March 2004.

47.     Mr. Biscotti and Nuclear Consultants Group, Inc. have never engaged in activities infringing on the 760 Patent.

48.     In contrast, the Counterclaim Defendants have interfered with the Counterclaim Plaintiffs' advantageous business relations with individuals and businesses in the brachytherapy and related fields by, among other things: threatening to bring frivolous legal claims against such individuals or businesses if said individuals or businesses transact business with the Counterclaim Plaintiffs; threatening to otherwise embroil such individuals and/or businesses in litigation if said individuals or businesses transact business with the Counterclaim Plaintiffs; and/or, threatening to withhold business or products from individuals or companies doing business with the Counterclaim Plaintiffs.

## COUNTERCLAIMS

### Count I – Deceit

49.     Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 48 of the Counterclaim.

50.     Counterclaim Defendants intentionally misrepresented to Mr. Biscotti that they would issue to him equity in ACP in consideration of his payment of $20,000 and his labor.

51.     Counterclaim Defendants made this promise to Mr. Biscotti in order to obtain much needed capital and to entice Mr. Biscotti to work for WW and ACP.

52.     At the time Counterclaim Defendants misrepresented to Mr. Biscotti that they would issue to him equity in ACP in consideration of his payment of $20,000 and his labor they knew that their promise was false and that they never intended to provide to Mr. Biscotti ACP equity.

53.     Based upon Counterclaim Defendants' promises, Mr. Biscotti provided them with $20,000, continued to labor for WW until December 31, 2002 and labored for ACP from January 1, 2003 until February, 2004.

54.    Mr. Biscotti has suffered damage as a result of Counterclaim Defendants' misrepresentations and deceit in an amount to be determined at trial.

## Count II – Breach of Contract

55.    Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 54 of the Counterclaim.

56.    Counterclaim Defendants and Mr. Biscotti entered into an agreement whereby the Counterclaim Defendants agreed that they would issue to him equity in ACP in consideration of his payment of $20,000 and his labor.

57.    Mr. Biscotti fully performed and complied with the agreement by paying to the Counterclaim Defendants $20,000, continuing to labor for WW until December 31, 2002 and laboring for ACP from January 1, 2003 until February, 2004.

58.    Counterclaim Defendants breached the agreement by failing or refusing to deliver to Mr. Biscotti stock certificates or other documentation reflecting his ownership interest in ACP.

59.    Mr. Biscotti has been damaged by the Counterclaim Defendants' breach and is entitled to damages in an amount to be determined at trial.

## Count III – Promissory Estoppel

60.    Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 59 of the Counterclaim.

61.    Counterclaim Defendants promised to Mr. Biscotti that they would issue to him equity in ACP in consideration of his payment of $20,000 and his labor.

62.     Counterclaim Defendants made this promise with the intent and expectation that Mr. Biscotti would pay to them $20,000, would continue to labor for WW until the establishment of ACP and would labor for ACP thereafter.

63.     Mr. Biscotti relied on Counterclaim Defendants' promise and rejected other prospects as direct result of Counterclaim Defendants' promise.

64.     Counterclaim Defendants are precluded from denying the existence of the terms of their agreement with Mr. Biscotti.

65.     Mr. Biscotti is entitled to damages including, among other things, equity interest in ACP and/or monetary damages.

## Count IV – Violation of M.G.L. c. 149, §§ 148 and 150

66.     Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 65 of the Counterclaim.

67.     As Mr. Biscotti's employer, ACP and Mr. Lamoureux had an obligation to pay Mr. Biscotti all earned wages on a timely basis.

68.     ACP and Mr. Lamoureux failed, without legal justification, to pay to Mr. Biscotti all wages due and owing to him.

69.     Mr. Biscotti has suffered damages as a direct and proximate result of ACP's and Mr. Lamoureux's wrongful withholding of his wages.

## Count V - Unjust Enrichment

70.     Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 69 of the Counterclaim.

71.     By his labor for ACP Mr. Biscotti earned but was not paid for compensation.

72.     Mr. Biscotti has a right to his earned compensation.

73.     The Counterclaim Defendants possess all of the funds owed to Mr. Biscotti and to which they have no right of possession.

74.     It is unjust for the Counterclaim Defendants to retain these funds or the benefit of these funds.

75.     Mr. Biscotti has suffered damages as a direct and proximate result of the Counterclaim Defendants' unjust possession of his funds.

### Count VI – Tortious Interference with Advantageous Business Relations

76.     Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 75 of the Counterclaim.

77.     Counterclaim Plaintiffs enjoy advantageous business relations with numerous individuals and businesses in the brachytherapy and related fields.

78.     Counterclaim Defendants are aware that the Counterclaim Plaintiffs enjoy advantageous business relations with numerous individuals and businesses in the brachytherapy and related fields.

79.     Counterclaim Defendants have interfered with the Counterclaim Plaintiffs' advantageous business relations with individuals and businesses in the brachytherapy field by, among other things: threatening to bring frivolous legal claims against such individuals or companies if said individuals or businesses transact business with the Counterclaim Plaintiffs; threatening to otherwise embroil such individuals and/or businesses in litigation if said individuals or businesses transact business with the Counterclaim Plaintiffs; or, threatening to withhold business or products from individuals or businesses doing business with either of the Counterclaim Plaintiffs.

80.     Counterclaim Plaintiffs have suffered damage as a result of Counterclaim Defendants' illegal interference in an amount to be determined at trial.

### Count VII – Unfair or Deceptive Acts or Practices – M.G.L. c. 93A

81.     Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 80 of the Counterclaim.

82.     Defendants are engaged in trade and commerce in Massachusetts.

83.     Counterclaim Defendants engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A, §§ 9 and 11 by, among other things, intentionally misrepresenting to Mr. Biscotti that they would issue to him equity in ACP in consideration of his payment of $20,000 and his labor and illegally interfering with the Counterclaim Plaintiffs' advantageous business relations.

84.     Based upon Counterclaim Defendants' unfair and deceptive acts, Mr. Biscotti provided them with $20,000, continued to labor for WW until December 31, 2002 and labored for ACP from January 1, 2003 until February, 2004.

85.     Counterclaim Plaintiffs have suffered damage as a result of Counterclaim Defendants' deceptive acts and practices in an amount to be determined at trial.

### Count VIII – Declaration of Non-Infringement of 760 Patent

86.     Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 85 of the Counterclaim.

87.     An actual controversy exists between the Counterclaim Plaintiffs and the Counterclaim Defendants concerning the alleged infringement of the 760 patent, which requires a declaration of rights by this Court.

88.     Counterclaim Defendants allege that the Counterclaim Plaintiffs have infringed and/or are infringing the 760 patent.

89.     Counterclaim Plaintiffs deny that they have infringed and/or are infringing the 760 patent.

90.      Counterclaim Plaintiffs are entitled to a declaratory judgment that Counterclaim Plaintiffs have not and are not infringing the 760 patent.

### Count IX – Declaration of Non-Infringement of 760 Patent

91.     Counterclaim Plaintiffs reallege and incorporate by reference paragraphs 1 through 90 of the Counterclaim.

92.     An actual controversy exists between the Counterclaim Plaintiffs and the Counterclaim Defendants concerning the invalidity of the 760 patent, which requires a declaration of rights by this Court.

93.     The 760 patent is invalid under the patent laws of the United States, 35 U.S.C. §§101 *et seq.*, including, without limitation, §§102, 103, and 112.

94.     Counterclaim Plaintiffs are therefore entitled to a declaratory judgment that the 760 patent is invalid.

**WHEREFORE**, the Defendants/Counterclaim Plaintiffs Anthony Biscotti and Nuclear Consultants Group, Inc. pray   that this Court:

(a)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count I of the Counterclaim and award all damages as are just and reasonable;

(b)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count II of the Counterclaim and award all damages as are just and reasonable;

(c)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count III of the Counterclaim and award all damages as are just and reasonable;

(d)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count IV of the Counterclaim and award all damages as are just and reasonable;

(e)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count V of the Counterclaim and award all damages as are just and reasonable;

(f)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count VI of the Counterclaim and award all damages as are just and reasonable;

(g)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count VII of the Counterclaim and award all damages as are just and reasonable, including treble damages and all costs and attorneys' fees as allowed pursuant to M.G.L. c. 93A;

(h)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count VIII of the Counterclaim and declare that that Counterclaim Plaintiffs have not and are not infringing the 760 patent;

(i)     Enter judgment against the Counterclaim Defendants and in favor of the Counterclaim Plaintiffs on Count IX of the Counterclaim and declare that that the 760 patent is invalid;

(j)     Award the Counterclaim Plaintiffs their costs, expenses and attorneys' fees;

(k)     Grant such other and further relief as appropriate.

**COUNTERCLAIM PLAINTIFFS DEMAND A JURY TRIAL
ON ALL CLAIMS SO TRIABLE.**

Respectfully Submitted,

ANTHONY D. BISCOTTI and
NUCLEAR CONSULTANTS
GROUP, INC.

By their attorneys,


  /S/     John F. Tocci
John F. Tocci, Esq., BBO# 562139
Tocci, Goss & Lee, P.C.
35 India Street, 5th Floor
Boston, MA  02110
(617) 542-6000

Dated: February 11, 2005